**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**JAMES ARNOLD BROWN,**

**Plaintiff,**

**v.**
                                                          **Civil Action No. 2:17cv2**
                                                          **(Judge Bailey)**

**DOUGLAS YOST, Detective; BRICE**
**FISHER, Task Force Officer; and**
**MARK HAYES, Magistrate Judge,**

**Defendants.**

## REPORT AND RECOMMENDATION

### I. Introduction

On January 6, 2017, the *pro se* Plaintiff, a state court pretrial detainee, incarcerated at the

North Central Regional Jail ("NCRJ") in Greenwood, West Virginia, filed the instant civil rights

case pursuant to 42 U.S.C. § 1983, raising allegations stemming from two arrests that occurred

on October 19, 2016 and November 8, 2016, in Marion County, West Virginia. Plaintiff's

Motion for Leave to Proceed *in forma pauperis* was granted on February 1, 2017 by Magistrate

Judge James E. Seibert [ECF No. 8] and Plaintiff paid the initial partial filing fee on February 8,

2017. ECF No. 10. On March 22, 2017, after conducting a preliminary review, Magistrate Judge

James E. Seibert directed the Defendants to answer the complaint. ECF No. 12. On April 18,

2017, Defendant Mark Hayes ("Hayes") filed a Motion to Dismiss with a memorandum in

support. ECF Nos. 18  19.  On April 19, 2017, Defendants Brice Fisher ("Fisher") and Douglas

Yost ("Yost") filed a motion to dismiss with a memorandum in support. ECF Nos. 21 & 22.

Because Plaintiff was proceeding *pro se*, a <u>Roseboro</u> Notice was issued on April 24, 2017 to

advise Plaintiff of his right to respond to Defendant Hayes' dispositive motion. ECF No. 24. A

second <u>Roseboro</u> Notice was entered on May 4, 2017, to advise Plaintiff of his right to respond to Defendants Fisher and Yost's dispositive motion.  ECF No. 30.  On May 8, 2017, Plaintiff filed a response in opposition to Defendant Hayes' dispositive motion. ECF No. 31. On May 15, 2017, Defendant Hayes filed a reply.  ECF No. 33. On May 22, 2017, Plaintiff filed a response in opposition to Defendants Fisher and Yost's dispositive motion.  ECF No. 34. Defendants Fisher and Yost filed their reply the same day.  ECF No. 35. Plaintiff filed a motion for appointed counsel on July 17, 2017.  ECF No. 38.  By Order entered August 23, 2017, Plaintiff's motion for appointed counsel was denied. ECF No. 40. On September 15, 2017, this case was reassigned from Magistrate Judge James E. Seibert to Magistrate Judge Michael J. Aloi.

## II. <u>Background</u>[1]

On October 19, 2016, the Three Rivers Drug Task Force was assisting the Fairmont West Virginia Police Department on a search warrant related to a sexual assault at 103 Weatherwax Street, Fairmont, West Virginia. ECF No. 1 at 7. The homeowner of that residence, one Charles "Bubba" Echols ("Echols"), was the suspect in the sexual assault case; Echols rented a room in the residence to Plaintiff.  <u>See</u> ECF No. 34-1 at 3; ECF No. 34-2 at 1 - 3, ECF No. 34-3 at 1. After officers knocked, Echols let the officers in and he was cuffed. ECF No. 34-2 at 1. Plaintiff was detained near the back door of the residence and was restrained by a non-defendant officer while the search warrant was executed.  ECF No. 1 at 7 – 8; <u>see also</u> ECF No. 34-2 at 1 & 4. After Defendant Detective Yost "kicked through [the] locked door" of the bedroom Plaintiff had just exited, Yost searched Plaintiff, then his room and his belongings. ECF No. 1 at 7 – 8.

---

[1] The facts in this section were obtained from Plaintiff's complaint, from copies of law enforcement documents related to the Plaintiff's underlying state criminal proceedings that Plaintiff attached to his response in opposition to the Defendants' dispositive motions, and from law enforcement documents related to the underlying state criminal proceedings attached as exhibits to Defendant Hayes' dispositive motion.

The officers discovered $620 in United State currency on Plaintiff's person. ECF No. 34-2 at 1. Inside Plaintiff's room in a black shopping bag, officers found "110 sealed 2g packs of "Wonderland" synthetic marijuana." Id. Officers also discovered $173 in United States currency in Plaintiff's room, along with a loaded 12 gauge Stevens pump shotgun, "several empty "Wonderland" synthetic marijuana packs, along with several empty "F'ed Up" brand synthetic marijuana packs." Id. There were 2 camera monitors connected to 2 cameras that watched the exterior of the house from Plaintiff's room; these were also seized. Id. Plaintiff's roommate/landlord Echols advised the officers that Plaintiff was selling synthetic marijuana from the back bedroom in the house, and that many of the individuals who purchased the drug would "trade tools, ammunition and other items" in exchange for it. ECF No. 34-2 at 2. Plaintiff was arrested for possession with intent to deliver and transported to the Fairmont Police Department ("FPD"). ECF No. 34-2 at 4. *En route* to the FPD, Plaintiff yelled and cursed at the officers, calling them "racists." Id. Once at the FPD, Plaintiff was placed in a cell, where he continued to yell and curse. Id. Finally, one of the officers processing his arrest overheard Plaintiff say something about his blood pressure; the officer opened Plaintiff's cell and tried to

> calm Brown down so that . . . [the officer] could assess his physical condition . . . [the officer] was able to calm Brown down and asked if he needed to have EMS or the Fire Dept. to respond. Brown advised that he did not need any assistance . . . [The officer] told him . . . [he] could just have the Fire Dept. walk over and check his blood pressure and again . . . [Brown] denied needing any assistance . . . [the officer] told Brown if he remained calm he could come out of the cell and sit with us and Brown advised that he would be calm . . . from that point on in . . . [the officer's] custody [Brown] remained calm and pleasant.

Id. Plaintiff was taken before a Magistrate Judge for an initial appearance; bond was set at $125,000. See ECF No. 1 at 12; see also ECF No. 18-1 at 5. Plaintiff did not initially post bond, but on or about November 6, 2016, Plaintiff was able to make bond and was released. ECF No. 1 at 12.

On November 8, 2016, the Three Rivers Drug Task Force returned to the residence at 103 Weatherwax Street to execute a body warrant for Plaintiff, to charge him with conspiracy arising out of the facts and evidence discovered during their October 19, 2016 visit. ECF No. 1 at 9; see also ECF No. 34-3 at 1. Plaintiff contends that the officers knocked on his bedroom door, asking him to open it; he complied and was immediately handcuffed; and Defendants Yost and Brice entered and searched the room. ECF No. 1 at 9 – 10; see also ECF No. 34-3 at 1. After securing Plaintiff, Defendants Brown and Yost performed a protective sweep of Plaintiff's room, discovering a brown paper bag containing 24 2g packs of Wonderland synthetic marijuana in plain view under a piano. ECF No. 34-3 at 1. Plaintiff was transported to the FPD for processing. Id. While being processed, Plaintiff made "threats on officers['] lives . . . includ[ing] bringing subjects from Pittsburgh with firearms." Id. Additional criminal complaints were drafted; in addition to conspiracy, Plaintiff was charged with another count of possession with intent to deliver and terroristic threats. Id. He was taken before Marion County Magistrate Judge Mark Hayes for arraignment. Id. Bond was set at $250,000. Id. Plaintiff was unable to post bond and was transported to the North Central Regional Jail by Defendants Yost and Fisher. Id.

### III. Contentions of the Parties

#### A. The Complaint

Plaintiff raises two claims of illegal search and seizure, occurring on October 19, 2016 and November 8, 2016, respectively. ECF No. 1 at 7 & 9. He also alleges official misconduct by Defendants Yost and Fisher via assault on a detainee, and official misconduct against Defendant Hayes, in the form of the violation of his right to a fair and reasonable bond. ECF No. 9.

Plaintiff contends that during the October 19, 2016 visit to his residence, the Defendants Yost and Fisher conducted an unlawful search and seizure. ECF No. 1 at 7. He asked them if

they had a search warrant and when told that they did, asked to see it, but was told that they did not have to show it to him. <u>Id.</u> at 8. He contends that on November 18, 2016, under oath, Defendant Yost testified that the search warrant was for "sheets, blankets, and cell phones, none of which he Detectives . . . [were] searching [for] before . . . [I] was . . . [led] away." <u>Id.</u>

Similarly, Plaintiff contends that on November 8, 2016, when the Defendants Yost and Fisher returned to his residence to execute a body warrant on him for a conspiracy charge, Yost and Fisher again entered and searched his room, despite the fact that they only had a body warrant for his arrest. <u>Id.</u> at 9 – 10.

Plaintiff contends that Defendants Yost and Fisher committed "official misconduct" by assaulting him while he was a pretrial detainee, when they transported him to the NCRJ on October 19, 2016 and again on November 8, 2016. <u>Id.</u> at 9.

Plaintiff further asserts that at the arraignment for the November 8, 2016 arrest, despite his presumption of innocence, after improperly reprimanding him about being guilty, Defendant Magistrate Judge Hayes committed "official misconduct" by setting his bond at double what it had been for the October 19, 2016 arrest, or $250,000, which, together with the earlier bond of $125,000, totaled $375,000 bond for cases issued to him by the Three Rivers Drug Task Force, when he was only an "unemployed nonviolent criminal." <u>Id.</u> at 12.

Plaintiff contends that as a result of the Defendants' actions, he has suffered "mental and physical stress" and has been damaged by being incarcerated with "high and unreasonable bonds." <u>Id.</u> at 13.

Nonetheless, Plaintiff seeks only injunctive relief in the form of a directive from this Court to have the "illegally obtained evidence thrown out" and to have Yost and Fisher prosecuted for "abuse of a detainee." <u>Id.</u>

**B. Defendants Doug Yost and Brice Fisher's Motion to Dismiss**

Defendants Yost and Fisher contend that Plaintiff's complaint should be dismissed because he fails to state a claim under 42 U.S.C. § 1983 and does not meet the requisite pleading standard required by Fed.R.Civ.P. 8 and <u>Ashcroft v. Iqbal</u>. ECF No. 21 at 1. Further, Plaintiff has not pled any cause of action for "official misconduct, assault of a detainee." <u>Id.</u> at 2. Finally, they argue that the complaint should be dismissed pursuant to the federal court abstention doctrine set forth in <u>Younger v. Harris</u>,[2] because Plaintiff is seeking equitable relief from an ongoing state court criminal prosecution. ECF No. 22 at 11.

**C. Plaintiff's Response in Opposition to Defendants Yost and Fisher's Motion to Dismiss**

Plaintiff reiterates and elaborates on the facts alleged in his complaint and expands on his arguments contained therein, attempting to refute Defendant Yost and Fisher's on the same. For the first time, he alleges constitutional violations associated with his claims. ECF No. 34 at 2-3 & 5. In support, he attaches copies of: the October 19, 2016 search warrant; the October 19, 2016 Three Rivers Task Force incident report; an October 20, 2016 FPD incident report; a November 8, 2016 Three Rivers Task Force Incident report; and a copy of a November 8, 2016 FPD property receipt. ECF Nos. 34-1, 34-2, & 34-3.

**D. Defendants Yost and Fisher's Reply**

Defendants Yost and Fisher urge that the complaint be dismissed because Plaintiff's response is silent as to the application of the <u>Younger</u> abstention doctrine; as such, they contend that their argument on this point is uncontested. ECF No. 35 at 2. Further, they reiterate their argument that Plaintiff has not sufficiently pled a claim under § 1983, because his complaint is silent as to which Constitutional provisions or laws, if any, have been violated. <u>Id.</u> at 2 – 3.

**E. Defendant Hayes' Motion to Dismiss**

---

[2] <u>Younger v. Harris</u>, 401 U.S. 37 (1971).

Defendant Hayes contends that the Plaintiff's complaint should be dismissed as to him because Plaintiff fails to state a cause of action under § 1983 [ECF No. 18 at 1 - 2]; the doctrine of absolute judicial immunity bars Plaintiff's claims as they relate to him [id. at 1]; and the Younger abstention doctrine also warrants dismissal of Plaintiff's claims. Id. Further, Hayes argues that claims for injunctive relief against him are barred by the plain language of 42 U.S.C. § 1983. Id. Finally, he notes that Eleventh Amendment immunity also bars any claim by Plaintiff against him for retroactive equitable relief. Id. Further, Hayes notes that "although not mentioned in the Plaintiff's complaint, the Marion County Magistrate Court records reflect that Plaintiff's motion for reduction of his . . . $250,000 bond was granted on November 18, 2016" and his bond was lowered to $175,000. ECF No. 19 at 3 & 6.

## F. Plaintiff's Response in Opposition to Defendant Hayes' Motion to Dismiss

Plaintiff reiterates and elaborates on the facts alleged in his complaint and expands on his arguments contained therein, attempting to refute Defendant Hayes' on the same. He notes that Hayes does not deny that there was misconduct or error in his actions.  ECF No. 31 at 2. He contends that the Eighth Amendment proscribes excessive bail and cruel and unusual punishment. Id.  Further, he contends that despite Hayes' advising him he would be given a reasonable time and opportunity to talk to an attorney, he did not receive that before transport, nor was "normal procedure" followed, by having a sheriff take him to jail, so he was subjected to Yost and Fisher's cruel and unusual punishment, causing him to experience a hypertensive episode "and possible death or permanent injury." Id. at 2 – 3.

## G. Defendant Hayes' Reply to Plaintiff's Response

Defendant Hayes' reply again notes that Plaintiff's claim of "excessive bail" omits mention, as does Plaintiff's complaint, that the $250,000 bail was subsequently reduced to

$175,000, in response to Plaintiff's motion for bond reduction. ECF No. 33 at 2. Hayes further notes that he denies that any misconduct or error was committed, but that even so, the doctrine of judicial immunity is an absolute bar to any allegation of misconduct or error. Id. He reiterates his argument that injunctive relief against a judicial officer is unavailable in a § 1983 action. Id. at 3. Finally, Hayes notes that Plaintiff makes no response to his Younger abstention principles argument. Id.

## IV. <u>Standard of Review</u>

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. <u>Revene v. Charles County Comm'rs</u>, 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct.1955, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion

couched as a factual allegation. Id.; see also Nemet Chevrolet, Ltd. v. Comsumeraffairs.com, Inc., 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Id.

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. See Fed.R.Civ. P 8 (providing general rules of pleading), Fed.R.Civ. P. 9 (providing rules for pleading special matters), Fed.R.Civ. P. 10 (specifying pleading form), Fed.R.Civ. P. 11 (requiring the signing of a pleading and stating its significance), and Fed.R.Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.) Francis v. Giacomelli, 588 F.3d 186 (4th Cir. 2009).

Brown is representing himself, which requires the Court to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251(1976); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(per curiam); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001)(cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462 (4th Cir. 2011).

## V. Analysis

### A. Civil Rights Act, 42 U.S.C. §1983

Title 42 U.S.C. §1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in any action at law . . . or suit in equity.

42 U.S.C. § 1983. Therefore, the initial inquiry in § 1983 case is: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986).

Whether a constitutional right is alleged to have been violated is usually clear, but the under color of law requirement has been subject to more debate. "As a general rule, 'a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.'" Conner v. Donnelly, 42 F.3d 220, 223 (4th Cir. 1994)

(quoting <u>West v. Atkins</u>, 487 U.S. 42, 50 (1988); <u>see also</u> <u>Lugar v. Edmonson Oil Co., Inc.</u>, 457 U.S. 922, 936 n.18 (1982) (finding that "state employment is generally sufficient to render the defendant a state actor"). Thus, it is clear that no state law has to be in place that is the source of the constitutional violation. Rather, any person acting with a badge of authority given to them by virtue of their position with the state who violates a person's constitutional rights is subject to liability for the unconstitutional act. <u>See</u> <u>West v. Atkins</u>, 487 U.S. at 49 *(citing* <u>United States v. Classic</u>, 313 U.S. 299, 326 (1941)); <u>see also</u> <u>Monroe v. Pape</u>, 365 U.S. 167, 187 (1961).

**A. <u>Defendant Hayes, Magistrate Judge, Marion County Circuit Court, Marion County West Virginia</u>**

Plaintiff's claim against Magistrate Judge Hayes is that Hayes committed "official misconduct" by subjecting Plaintiff to an unreasonably high bond on November 8, 2016. ECF No. 1 at 9 & 12. In Plaintiff's response in opposition to Defendant Hayes' dispositive motion, for the first time, he alleges that Hayes violated his Eighth Amendment right to be free from cruel and unusual punishment and "excessive bond." ECF No. 31 at 2. Defendant Hayes argues *inter alia,* that as a judicial officer, he is immune from liability. ECF No. 33 at 2. The undersigned agrees.

For nearly a century and a half, the Supreme Court of the United States has recognized judicial immunity as a firmly rooted principle of law that shields judicial officers from civil suit for actions taken in the exercise of their judicial functions, holding that "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself. <u>Bradley v. Fisher</u>, 80 U.S. 335, 347 (1872). In <u>Bradley</u>, the Supreme Court further held that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess

of their jurisdiction, and are alleged to have been done maliciously or corruptly." Bradley at 351. Further, judges who are sued under 42 U.S.C. §1983 are absolutely immune from individual liability in exercising their judicial jurisdiction. Pierson v. Ray, 386 U.S. 547 (1967). "Judicial immunity is immunity from suit, not just the ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991). Magistrates also are entitled to absolute immunity for acts performed in their judicial capacity. King v. Myers, 973 F.2d 354 (4th Cir. 1992).

There are two exceptions to the absolute judicial immunity rule - if a judge acts without jurisdiction or has not acted in a judicial manner. Forrester v. White, 484 U.S. 219 (1988); Stump v. Sparkman, 435 U.S. 349, 356 (1978), *rehearing denied,* 436 U.S. 951 (1978). To determine whether an act is judicial, a court should examine the nature of the act itself. Stump v. Sparkman, 435 U.S. at 362. Specifically, the court should determine whether the act complained of is a function normally performed by a judge. Id.

Here, Plaintiff has failed to set forth sufficient facts to demonstrate that Magistrate Judge Hayes acted without jurisdiction or did not act in a judicial manner. Even taking the most liberal view of Plaintiff's complaint, no set of facts could give rise to relief because Magistrate Judge Hayes was clearly acting in his official capacity on November 8, 2016 when he conducted Plaintiff's initial appearance and set his bond. Hayes has attached a copy of Plaintiff's November 8, 2016 initial appearance/ rights statement; Plaintiff's November 8, 2016 Criminal Bail Agreement; Plaintiff's October 19, 2016 Criminal Bail Agreement; and the Plaintiff's November 10, 2016 motion to lower his bond as exhibits to his motion to dismiss.[3] See ECF Nos. 18-1 at 1 – 6. Clearly, the acts were judicial and nature and were clearly within their

---

[3] The motion reflects that on November 18, 2016, the motion was granted, and Plaintiff's total bond on the charges for both dates was reduced from $375,000.00 to $175,000.00. ECF No. 18-1 at 6.

respective jurisdiction. Thus, Magistrate Judge Hayes is entitled to immunity and the undersigned recommends that the complaint, as it pertains to Hayes, be dismissed.

**B. <u>Unlawful Search and Seizures</u>**

Plaintiff first claims that Defendants Yost and Fisher conducted two unlawful searches, unlawfully seizing his property each time. ECF No. 1 at 7 – 8. He asserts that Yost and Fisher had no authority to search his belongings, because the first search warrant was only for sheets, blankets, and cell phones [<u>id.</u>], i.e., evidence of a sexual assault, and the second warrant was only a body warrant for his arrest on the conspiracy charge. <u>Id.</u> at 9 – 10. In Plaintiff's response in opposition, he finally alleges that the searches were conducted in violation of his Fourth Amendment rights. ECF No. 34 at 2 – 3.

Nonetheless, Plaintiff's claims regarding Defendants Yost and Fisher's allegedly illegal searches and seizures are barred by the doctrine of federal abstention in state court matters, set forth in <u>Younger v. Harris</u>. In <u>Younger</u>, the Supreme Court stated "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. <u>Younger v. Harris</u>, 401 U.S. at 43-44. <u>Younger</u> is grounded in notions of comity—the idea that a state court should not, in certain circumstances, be interfered with. <u>Younger</u>, 401 U.S. at 44. Under the <u>Younger</u> abstention doctrine, a federal court is required to abstain from interfering in ongoing state court proceedings, even if the federal court has jurisdiction, where the following test is met: (1) "there are ongoing state judicial proceedings;" (2) "the proceedings implicate important state interests;" and (3) "there is an adequate opportunity to raise federal claims in the state proceedings." <u>Martin Marietta Corp. v. Maryland Comm'n on Human Relations</u>, 38 F.3d 1392, 1396 (4th Cir. 1994) (citing <u>Middlesex County Ethics Comm. v. Garden State Bar Ass'n</u>,

457 U.S. 423, 432, 102 S.Ct. 2515, 73 L. Ed. 2d 116 (1982)); see also Virginia Inst. of Autism v. Virginia Dep't of Educ., 537 F.Supp.2d 817, 820 (E.D. Va. 2008). Once the three conditions are met, "Younger abstention is non-discretionary[.]" Amanatullah v. Colorado Board of Medical Examiners, 187 F.3d 116, 1163 (10th Cir. 1999).

Here, all three conditions have been met. It is undisputed among the parties that the state court criminal proceedings against the Plaintiff in Marion County Circuit Court are ongoing, and were instituted well before this this action in federal court. Second, while Plaintiff's complaint and responses in the instant matter are admittedly silent on the issue of abstention, even so, it is apparent that the Marion County Circuit Court can adequately handle any constitutional claims the Plaintiff might raise here.[4] Third, the criminal proceedings underway against Plaintiff in the Marion County Circuit Court implicate an important state interest in the orderly prosecution of state citizens, like the Plaintiff, who are charged with felony drug offenses. "Younger abstention represents an accommodation between a state's pursuit of important interests in its own forum and the federal interest in federal adjudication of federal rights." Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 165 (4th Cir. 2008). Given that all three criteria exist here, abstention bars the granting of Plaintiff's claims for injunctive relief regarding the exclusion of evidence obtained at the time of his arrest and the prosecution of his arresting officers, relief that is exactly what the Younger doctrine is designed to avoid.

## C. Official Misconduct – Assault of Pretrial Detainee Claims against Defendants Yost and Fisher

Plaintiff raises excessive force claims against Defendants Yost and Fisher, for their allegedly assaultive behavior while transporting him to the Marion County Magistrate Court for

---

[4] Under the well-established principles of federalism and comity, the Younger doctrine "also recognizes that state courts are fully competent to decide issues of federal constitutional law." Martin Marietta Corp., 38 F.3d at 1396.

his arraignment on October 19, 2016, and for their actions while driving him from the Marion County Magistrate Court to the NCRJ after his November 8, 2016 arraignment. See ECF No. 1 at 11.

While Plaintiff's complaint alleges that Defendants Yost and Fisher committed two instances of "official misconduct, assault of a detainee," he fails to allege that they violated any of his constitutional rights. Id. at 9 & 11. In his response in opposition to Yost and Fisher's dispositive motion noting that fact, for the first time, Plaintiff alleges that Yost and Fisher violated his Eighth Amendment right to be free from cruel and unusual punishment. ECF No. 34 at 5. Yost and Fisher's reply to Plaintiff's response argues that the Eighth Amendments' prohibition against cruel and unusual punishment is inapplicable to Plaintiff, a pretrial detainee, given that it applies only to those already convicted of crimes. ECF No. 35 at 8. Accordingly, they argue that they are entitled to dismissal of Plaintiff's claims against them, and, alternatively, that Plaintiff's claims should be dismissed pursuant to the Younger abstention doctrine.

As noted *supra*, § 1983 provides a civil cause of action for state action that deprives a citizen of a right, privilege, or immunity secured by the Constitution or federal law. 42 U.S.C. § 1983. The analysis of an excessive force claim brought under § 1983 begins with "identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Unlike Graham, however, whose excessive force claims were examined under the Fourth Amendment's "objective reasonableness standard," Fourth Amendment protections do not extend to arrestees or pretrial detainees. See Riley v. Dorton, 115 F.3d 1159, 1164 (4th Cir. 1997) (en banc) (holding that "the Fourth Amendment does not embrace a theory of 'continuing seizure' and does not extend to the alleged mistreatment of arrestees or pretrial detainees in custody"). In Riley, the

Fourth Circuit held that "[t]he Fourth Amendment [only] governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person." Id. at 1161. A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." See Scott v. Harris, 550 U.S. 372, 385 (2007) (*quoting* Brower v. County of Inyo, 489 U.S. 593, 596-597, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989) (emphasis deleted).

Instead, excessive force claims by a pretrial detainee or arrestee are governed by the Due Process Clause of the Fourteenth Amendment. See Young v. Prince George's County, Maryland, 355 F.3d 751, 758 (4th Cir. 2004) (quoting Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998)). Admittedly, "[t]he point at which Fourth Amendment protections end and Fourteenth Amendment protections begin is often murky." Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008).

In order to prevail on an excessive force claim under the Due Process Clause of the Fourteenth Amendment, a plaintiff must show that the officer "inflicted unnecessary and wanton pain and suffering." Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998) (citing Whitley v. Albers, 475 U.S. 312, 320, 106 S.C.t 1078, 89 L. Ed. 2d 251 (1991).

> In determining whether [this] constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm.

Orem, 523 F.3d at 446 (*quoting* Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973)

Given that *pro se* filers' pleadings are to be liberally construed, the undersigned will construe Plaintiff's inartful claims regarding Yost and Fisher's behavior while transporting him as arising under the Fourteenth Amendment.

Plaintiff's two claims of excessive force will be taken in turn.

It is apparent from Plaintiff's pleadings that Yost and Brown transported him twice on October 19, 2016. It is unclear from Brown's complaint and response in opposition whether his claim against Yost and Fisher for "assault on a pretrial detainee" occurred during the first short drive from the FPD to the Marion County Magistrate Court, or on the second, hour-long drive, from the Marion County Magistrate Court to the NCRJ in Greenwood, West Virginia. Nonetheless, at either point, Plaintiff's status as an arrestee or pretrial detainee requires application of the Fourteenth Amendment to his claim. After Plaintiff was arrested for possession with intent to distribute at the home where he was residing, he was cuffed, and transported first to the FPD by Officer Hayhurst [ECF No. 34-2 at 4]; once he was processed, he was driven by Yost and Fisher to the Marion County Magistrate Court in Fairmont, West Virginia to be arraigned on the charge. ECF No. 1 at 11. After being arraigned, when he could not immediately post bond, he was then transported to the NCRJ, again by Yost and Fisher. ECF No. 1 at 11.

Plaintiff's claim of assault is that Yost and Fisher transported him in the back seat of an unmarked car without audio or video. ECF No. 1 at 11. While driving "in Fairmont . . . the backseat windows were rolled down exposing me to the public" and Yost yelled something to other vehicles as he drove through town to the effect of "look what we got." ECF No. 1 at 11. In Brown's response in opposition, he elaborates this allegation, asserting that Yost's statement implied that Brown "was a[n] object not a person[.]" ECF No. 34 at 4. At some point in the trip, Yost stopped at a gas station and offered to get Plaintiff a cold drink, either "Kool Aid or grape soda pop." ECF No. 1 at 11; see also ECF No. 34 at 4. In his complaint, Plaintiff merely alleges in response, he told Yost that he "couldn't wait to tell a judge about my experience." ECF No. 1 at 11. However, in his response in opposition, Brown asserts that Yost used "racial innuendos" when offering him the drink, and it was in response to that, that Plaintiff promised to report

Yost's actions to the judge. ECF No. 34 at 4. Either way, Plaintiff states that after he so advised Yost, Yost made a call on his cell phone and put the person on speakerphone. ECF No. 1 at 11; see also ECF No. 34 at 4 – 5. In his complaint, Brown alleges that a male voice started "yelling things and addressing me by name as I remained silent on the rest of the drive to . . . [NCRJ]." ECF No. 1 at 11.  In his response in opposition, he alleges that Yost put the person on speakerphone "in an attempt to provoke me or maybe influence the judge to render a[n] excessive bail." ECF No. 34 at 4-5.

Even viewing these facts in a light most favorable to Plaintiff, it is apparent that on October 19, 2016, Yost and Fisher did not inflict any unnecessary or wanton pain and suffering upon Plaintiff.  Plaintiff does not allege that Yost or Fisher applied any force at all, let alone force applied in a good faith effort to maintain and restore discipline; or malicious, sadistic, and unnecessary force applied for the very purpose of causing harm, once he was already cuffed and shackled and in custody in the back seat of the car. Plaintiff alleges no force, nor any injury at all, other than anger and/or humiliation at a possible racial innuendo, or at being driven through Fairmont with the window down, being seen as being under arrest. Even accepting Plaintiff's allegations as true, mere verbal harassment does not give rise to a constitutional violation. See Wagner v. Wheeler, 13 F.3d 86, 92-93 (4th Cir. 1993) (verbal abuse does not amount to a constitutional violation); see also Eury v. Angelone, No. 01-cv-257, 2001 WL 24042606, at *4 (E.D. Va. June 11, 2001) (alleged derogatory racial remarks, even if true, are not constitutional violations). Further, *de minimis* injury can foreclose a Fourteenth Amendment claim. Orem, 523 F.3d at 447.  Therefore, even when viewing the facts in a light most favorable to Plaintiff, the undersigned finds that Plaintiff has not alleged facts sufficient to show that Defendants Yost

and/or Fisher committed a constitutional violation, thus, he has failed to state a claim upon which relief can be granted.

Plaintiff's next excessive force claim against Defendants Yost and Fisher alleges that they returned to Plaintiff's residence for the second time on November 8, 2016 to arrest him for conspiracy. ECF No. 1 at 9. The incident report Fisher prepared of that arrest indicates that Plaintiff was "reluctant to comply" when directed to show his hands and keep them in sight." ECF No. 34-3 at 1. Nonetheless, Plaintiff did comply when directed to get down on his knees and walk out on his knees to be taken into custody. Id. The record before the undersigned does not reveal who drove Plaintiff from his residence to the FPD. However, upon arrival at the FPD, throughout the time he was being processed at the FPD, Plaintiff apparently made threats on the officers' lives, resulting in an additional charge of terroristic threats, in addition to the conspiracy charge and the second possession with intent to deliver charge. ECF No. 34-3 at 1. Fisher's incident report indicates that Brown was taken from the FPD to the Marion County Magistrate Court to be arraigned [id.]; Plaintiff alleges that Yost and Fisher transported him from the Marion County Magistrate Court to the NCRJ. ECF No. 1 at 11; see also ECF No. 34 at 4. Plaintiff contends that he was made to sit in the front passenger seat; Yost drove, and allegedly repeatedly hit him with a half bottle of soda pop on the head and shoulder during the trip; Fisher sat directly behind Plaintiff and repeatedly grabbed Plaintiff's shoulders and seat and shook his body; and Plaintiff heard Fisher un-holster his weapon and felt something push at the back of the seat. ECF No. 1 at 11. He contends that by the time he arrived at the NCRJ, he was so upset that the nurse had to call for the doctor because his blood pressure was 220/110 "at stroke level," and he was "rushed to the medical unit for fear I was stroking and may pass away." Id.

Again, Plaintiff's status as an arrestee or pretrial detainee requires application of the Fourteenth Amendment to this claim. Despite Plaintiff's allegations of being hit with a half-full pop bottle, having his shoulders and/or seat grabbed, or hearing a weapon being unholstered and then feeling pressure on the back of the seat, Plaintiff has not even alleged that he sustained even the most trivial physical injury, laceration, abrasion, bump, or contusion; indeed, he alleges no injury at all, beyond a transient episode of hypertension, which apparently was not even severe enough to require a trip away from the NCRJ to an outside medical facility. Moreover, this hypertensive episode could just as easily have been attributable to his documented anger and agitation during processing, given the threats he was making toward the arresting officers.[5] Nonetheless, assuming that these alleged physical acts of harassment during transport were indeed committed by Yost and Fisher, while unnecessary and repugnant, they still do not rise to the level of a Due Process violation of the Fourteenth Amendment. "[N]ot every push or shove, even if it may later seem unnecessary" is serious enough to entail a deprivation of a constitutional right. Graham, 490 U.S. at 396.

> Those in detention often detest those charged with supervising their confinement, and seek to even the score through the medium of a lawsuit. The Constitution, however, does not exist to scoop up every last speck of detainee discontent. To hold that every incident involving contact between an officer and a detainee creates a constitutional action, even in the absence of injury, trivializes the nation's fundamental document.

Riley, 115 F.3d at 1167

Accordingly, even when viewing these facts in a light most favorable to Plaintiff as required, the undersigned finds that Plaintiff has not alleged facts sufficient to show that

---

[5] Fisher's November 8, 2016 Incident Report noted that "Brown[' ]s threats included bringing subjects from Pittsburgh with firearms . . . [and] stated that the only way to prevent his would be for officers to stop investigating his criminal activity and to quit harassing him." ECF No. 34-3 at 1.

Defendants Yost and/or Fisher committed a constitutional violation, thus, he has again failed to state a claim upon which relief can be granted.

## VI. Recommendation

For the reasons stated herein, the undersigned respectfully recommends that Defendant Mark Hayes' Motion to Dismiss [ECF No. 18] and Defendants Fisher and Yost's Motion to Dismiss [ECF No. 21] be **GRANTED**, and Plaintiff's Complaint [ECF No. 1] be **DENIED** and **DISMISSED with prejudice** against all Defendants.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner via certified mail, at his last known address as reflected on the docket, and to transmit a copy electronically to all counsel of record.

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

DATED: October 30, 2017

/s/ *Michael J. Aloi*
MICHAEL J. ALOI
UNITED STATES MAGISTRATE JUDGE